IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELICA B. SMITH, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:22-CV-02472 |
| | § | |
| VALVOLINE, LLC | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### DEFENDANT VALVOLINE LLC'S
### MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Valvoline, LLC (the "Company," "Valvoline," or "Defendant") files this Motion for Summary Judgment and Brief in Support, and would show:

### I. SUMMARY OF ARGUMENT

Valvoline has a strong commitment to maintaining a work environment where people are treated with respect, and in turn, has a strict policy against the harassment of employees or applicants. The Company maintains multiple avenues of reporting procedures for employees who believe they have experienced or observed harassment. Complaints are promptly investigated by Valvoline's Employee Relations, and corrective action, including discipline up to and including termination, is taken upon the confirmation that Valvoline's policies have been violated.

This was exactly the case when Plaintiff Angelica Smith ("Plaintiff") made complaints to Valvoline about alleged sexual harassment – not once, but twice. In both instances, she complained that she was being subjected to unwanted harassment; the Company promptly investigated her allegations and immediately terminated the employees identified by Plaintiff. Specifically, in October 2019, Plaintiff made a complaint of sexual harassment against a coworker. Valvoline immediately investigated her complaints, and while the Company could not conclusively confirm

1

Plaintiff's allegations (as there were no witnesses), Valvoline took her word for it and terminated the coworker's employment <u>four</u> days later. In September 2021, Plaintiff made a second complaint of sexual harassment against a different coworker. Valvoline again promptly investigated her complaint, and upon substantiating it, terminated the coworker's employment <u>two</u> days later.

In approximately October 2021, Plaintiff took a continuous leave of absence due to a non-work-related injury she sustained. Per Valvoline policy, Plaintiff was required to pass a fitness for duty examination and drug test before returning to work. Plaintiff completed the fitness for duty examination, but she was not initially cleared to return to work because of the side effects of the medication she was taking. Valvoline continued to work with Plaintiff to secure a clearance to return to work from Plaintiff's doctor, and Plaintiff returned back to work once the proper documentation and releases were secured.

In late February 2022 Plaintiff reported that she had a car accident in which she was injured. Plaintiff worked for a few days, and her last day of work was March 9, 2022, before she began a leave of absences to address the injuries from the car accident. On or about April 4, 2022, Plaintiff returned her uniform to Valvoline and abruptly tendered her resignation from the Company.

Plaintiff cannot prove her claims for hostile work environment. First, several of the allegations Plaintiff makes in her live pleading are time-barred by the applicable statute of limitations. Second, these allegations are also outside the scope of Plaintiff's Charge of Discrimination, and she has therefore failed to exhaust her administrative remedies regarding these allegations. Third, she cannot establish that she was subjected to severe or pervasive harassment in the workplace. Finally, Plaintiff cannot prove her claim for hostile work environment because she cannot establish that Valvoline failed to take prompt remedial action. Indeed, Valvoline immediately investigated Plaintiff's complaints when she made them and took remedial action—

terminating the individuals the subject of her complaints—shortly after concluding the investigation. Therefore, Plaintiff's claims cannot survive summary judgment, and her claims must be dismissed.

## II. FACTUAL BACKGROUND

**A.    Valvoline and Its Relevant Policies on Equal Employment**

Valvoline is an American retail automotive services company. Valvoline provides employment opportunities to qualified individuals without regard to race, color, religion, sex, national origin, or any other personal characteristics protected by law. Exhibit A, Declaration of Kevin Meyers ("Meyers Dec."), ¶ 5; Exhibit A-1, Equal Employment Opportunity Policy. Valvoline is further committed to maintaining a work environment where people are treated with respect. Ex. A, Meyers Dec., ¶ 6; Exhibit A-2, Anti-Harassment Policy. Valvoline does not tolerate the harassment of employees or applicants by anyone, including any supervisor, coworkers or non-employee. *Id.*

To that end, Valvoline maintains reporting procedures for employees who believe they have experienced or observed harassment. Ex. A, Meyers Dec., ¶ 7. Employees may report the harassment to their on-site manager, Valvoline's Employee Relations, and/or Valvoline's Employee Hotline. *Id.* Each complaint is then handled by Employee Relations to conduct a complete investigation into the allegations. *Id.* If the investigation confirms that harassment occurred, Valvoline will take prompt corrective action, including discipline up to and including termination. *Id.*

**B.    Plaintiff's Employment with Valvoline.**

Valvoline hired Plaintiff at its La Porte, Texas plant as a Loader/Unloader on March 11, 2019. Exhibit B, Declaration of Robert Shelton ("Shelton Dec."), ¶ 3; Exhibit D, Deposition of Plaintiff ("Plaintiff Depo."), p. 20:18-23. In this role, Plaintiff performed all warehouse and

distribution related activities for domestic and international customer orders, including preparing and loading customer orders for shipment, receiving, storing and replenishing inventory, properly preparing materials and load materials onto export containers for overseas shipments, and conducting inventory counts as requested. Ex. B, Shelton Dec., ¶ 3. During her employment, Plaintiff reported to the Warehouse Supervisor, Dalan Motz, and Motz reported to the Plant Manager, Frank Harris (since February 2020). Ex. B, Shelton Dec., ¶ 2; Exhibit C, Declaration of Frank Harris ("Harris Dec."), ¶ 4; Ex. D, Plaintiff Depo., p. 23:1-8.

### 1. Plaintiff's 2019 Complaint of Sexual Harassment

On or about October 11, 2019, Plaintiff made an internal complaint to her supervisor, Dalan Motz, reporting that a co-worker on a separate shift, Kevin Williams, groped her twice, and made comments of a sexual nature. Ex. A, Meyers Dec., ¶ 8. Valvoline immediately began an investigation into Plaintiff's allegations. *Id.* Valvoline interviewed several employees, including Plaintiff and Williams. *Id.* Because there were no witnesses to these actions, Valvoline could not substantiate the allegations; however, Plaintiff's allegations appeared to be credible. As a result, Valvoline sided with Plaintiff's version of events, and terminated Williams' employment shortly thereafter. Ex. A, Meyers Dec., ¶ 8; Exhibit A-3, October 18, 2019, Letter to Williams; Ex. D, Plaintiff Depo., p. 34:7-12. Plaintiff had no further communication with Williams after his termination of employment. Ex. D, Plaintiff Depo., p. 35:3-10.

### 2. Plaintiff's 2021 Complaint of Sexual Harassment

On or about August 31, 2021, Smith approached her supervisor, Motz, requesting to review the video footage from August 26, 2021, because she "wanted to see something." Ex. D, Plaintiff Depo., pp. 36:24-37:3; 40:1-8; 40:21-41:14. The next day, on September 1, 2021, Plaintiff and Motz reviewed the video together, and Plaintiff pinpointed the incident. Ex. D, Plaintiff Depo., p.

4

43:6-44:14. The video revealed that Material Handler, Eric Hawkins, had touched Plaintiff's lower back/buttocks. *Id.* As a Material Handler, Hawkins would issue assignments to the Loaders/Unloaders, including Plaintiff, but he had no authority to hire, fire, or discipline any of the Loaders/Unloaders. Ex. C, Harris Dec., ¶ 4. Hawkins also reported directly to Motz. *Id.* Motz immediately reported Plaintiff's complaint to Plant Manager Harris, who escalated the complaint to Valvoline's Employee Relations. Ex. D, Plaintiff's Depo., p. 44:8-11. Plaintiff was also asked to provide a written statement concerning her allegations, which she also provided on September 1, 2021. Ex. C, Harris Dec., ¶ 5; Exhibit, C-1, 9-1-2021 Handwritten Note; Ex. D, Plaintiff Depo, p. 44:21-24.

Employees Relations then investigated Plaintiff's complaint. Ex. A, Meyers Dec., ¶ 8. Valvoline also suspended Hawkins pending the outcome of the investigation. *Id.* Valvoline interviewed several individuals in conjunction with its investigation, including Plaintiff, Hawkins, and Motz. *Id.* Ultimately, Valvoline substantiated Plaintiff's complaint. *Id.* As a result, Valvoline terminated Hawkins' employment two days later. Ex. A, Meyers Dec., ¶ 8; Exhibit A-4, September 3, 2021, Letter to Hawkins; Ex. D, Plaintiff Depo., p. 59:10-16

Following the conclusion of the investigation and Hawkins' termination, Plaintiff reported that Hawkins sent a text message to a text chain involving several Valvoline employees at the La Porte plant, including Plaintiff, distributing a photograph of Plaintiff from her social media account. Ex. C, Harris Dec., ¶ 7; Ex. D, Plaintiff Depo., pp. 60:7-62:17, 69:7-9.[1] Nothing in the photo or Hawkins' text identified that the photo was of or about Plaintiff. Ex. D, Plaintiff Depo., p. 64:21-23. Plaintiff concedes that the Company could not take any further action against

---

[1] Plaintiff also admits that numerous coworkers were her friends on social media and would have seen the photo separately from the text thread. Ex. D, Plaintiff Depo., p. 70:22-25.

Hawkins, as his employment had already been terminated. Ex. D, Plaintiff Depo., p. 69:12-15. However, as soon as Harris learned of former employee Hawkins' actions, he informed the current employees involved that they must delete the photograph and have no further discussion about it. *Id.* Harris encouraged Plaintiff to block the phone numbers on the text thread and to unfollow/unfriend coworkers on her social media accounts. Ex. C, Harris Dec., ¶ 7; Ex. D, Plaintiff Depo., p. 68:15-19. Additionally, Harris had a meeting with the La Porte employees to review and remind Plaintiff's co-workers of Valvoline's Anti-Harassment policy. Ex. C, Harris Dec., ¶ 7; Ex. D, Plaintiff Depo., p. 66:5-19. Harris also had a one-on-one follow up with Plaintiff regarding the communicated expectations to the team. Ex. C, Harris Dec., ¶ 7. Plaintiff admits that none of the individuals on the text thread communicated with her about the thread or their involvement. Ex. D, Plaintiff Depo., p. 71:17-21.

Harris then moved Plaintiff to the "kitting" department, a move that did not change Plaintiff's rate of pay, hours worked, or increase the physical demands of the job, but simply physically removed Plaintiff from the other employees who had been involved in the group text. Ex. C, Harris Dec., ¶ 9; Ex. D, Plaintiff Depo., pp. 73:2-5, 73:14-20, 74:6-10. Plaintiff asserted no further sexual harassment allegations following her move to the kitting department.

### 3. Plaintiff's Leave and Subsequent Resignation

On or about October 2, 2021, Plaintiff took leave pursuant to the Family & Medical Leave Act. Ex. C, Harris Dec., ¶ 11. Plaintiff was approved for leave through November 29, 2021. *Id.* Valvoline policy requires that an employee who goes on leave must complete a fitness for duty examination and drug test before returning to work. *Id.* Plaintiff completed the Fit for Duty Examination on December 2, 2021; however, she was not approved to return to work at that time. *Id.* Upon receipt of Plaintiff's fitness for duty examination, Valvoline reached out to Plaintiff, and

Plaintiff explained that she was not cleared to return to work due to a medication she was taking. *Id.* Plaintiff stated she had experienced drowsiness from the medication, and had gone back to her doctor, who changed the medication and lowered the dosage. *Id.* Valvoline requested that Plaintiff provide a return-to-work statement from her doctor. *Id.* Eventually, Plaintiff was cleared to return to work. *Id.*

Shortly after Plaintiff's return to work, in or about February 2022, Plaintiff sustained non-work-related injuries when she was in a car accident. Ex. C, Harris Dec., ¶ 13. Plaintiff took more time off. *Id.* While Valvoline tried to work with Plaintiff about her return to work, Plaintiff was nonresponsive. *Id.* Finally, on April 4, 2022, Plaintiff returned her uniform to Harris and voluntarily resigned from her employment with Valvoline. *Id.*

**C.**     **Procedural History**

On March 15, 2022, Plaintiff filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment. Ex. D, Plaintiff Depo., p. 86:8-14; Exhibit D-1, Charge of Discrimination. On July 26, 2022, Plaintiff filed this instant lawsuit alleging that she was subjected to a hostile work environment. *See* Plf's Original Complaint, Doc. 1.

### III. ARGUMENTS AND AUTHORITIES

In this matter, Plaintiff has asserted claims for a hostile work environment. Plaintiff's claims consist of two separate incidents: (1) an incident involving a coworker in 2019; and (2) an incident involving a different coworker in 2021. Plf's Orig. Complaint, Doc. 1, ¶¶ 10-17, 18-33. The Fifth Circuit has repeatedly held that the legal standard for workplace harassment is "high." *See Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 n. 33 (5th Cir. 2021); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). As outlined below, Plaintiff's hostile work environment claims fail as a matter of law, and should be dismissed.

A.      **Summary Judgment Standard**

As an initial matter, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether issues of fact exist requiring a trial, "the inferences to be drawn from the underlying facts… must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587, quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The moving party has the initial burden of showing no genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-23. Summary judgment must be entered if the nonmoving party fails to provide sufficient evidence on an essential element to that party's case on which the party will bear the burden of proof at trial. *Id*. The nonmoving party must present more than a mere scintilla of evidence and "may not rest upon the mere allegations or denials of his pleading, but… must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); FED. R. CIV. P. 56(e) (emphasis added). A party may not defeat a motion for summary judgment by relying on hearsay, conclusions, unsubstantiated assertions, conjecture or subjective beliefs. *Bodenheimer v. PPG Indust., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993).

B.      **Any Claims Predating May 19, 2021, Are Barred by the Applicable Statute of Limitations**

Plaintiff's claims arising from the 2019 incident fail as a matter of law for many reasons. First, Plaintiff did not submit a charge of discrimination until March 15, 2022. Ex. D-1, Charge of Discrimination. An employee must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred if the employee initially instituted

8

proceedings with a state or local agency seeking relief from the action. 42 U.S.C. § 2000e-5(e)(1). An employee must timely file this charge "before seeking judicial relief" under Title VII. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018).

Accordingly, the Court should not consider the 2019 event as it is time-barred.

C. **Any Claims Outside the Scope of Plaintiff's Charge of Discrimination Are Barred for Failure to Exhaust Administrative Remedies**

In addition to being time-barred, Plaintiff's claims related to the 2019 incident further fail because Plaintiff did not exhaust her administrative remedies. Under Title VII, a party seeking to bring a private suit on a federal cause of action must first exhaust his or her administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *see Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 569-70 (5th Cir. 2012). Plaintiff's Charge is devoid of any facts regarding the 2019 incident. *See* Ex. D-1, Charge of Discrimination. Indeed, Plaintiff's Charge does not even mention anything that occurred prior to August 5, 2021, or Kevin Williams' name.

"The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). Courts have interpreted this requirement to permit claims that could "reasonably be expected to grow out of the charge of discrimination." *Sabrah v. Lucent Techs.*, No. 3:96-CV-2827-D, 1998 WL 793501, at *1 (N.D. Tex. Nov. 6, 1998) (citing *Young v. City of Hous., Tex.*, 906 F.2d 177, 179 (5th Cir. 1990) (citation omitted)); *see also Reno v. Metropolitan Transit Authority*, 977 F. Supp. 812, 818 (S.D. Tex. 1997) (court found that Plaintiff's sexual harassment claim "would not have been developed and subsequently investigated during the course of the EEOC proceedings"). Here, Plaintiff's claims regarding the 2019 alleged sexual harassment could not reasonably be expected to grow out of the Charge. Plaintiff's Charge

9

does not mention any facts prior to August 5, 2021, nor does it mention Kevin Williams. Thus, it could not be reasonable to expect that her allegations from October 2019 regarding alleged sexual harassment by Kevin Williams would grow out of the Charge, and Plaintiff has therefore failed to exhaust her administrative remedies related to any such allegations.

**D.      Plaintiff's Hostile Work Environment Claim Fails**

To prevail on a hostile-work-environment claim, Plaintiff must show (i) she was a member of a protected group, (ii) she suffered harassment, (iii) the harassment was based on sex, (iv) the harassment affected a term, condition, or privilege of employment, and (v) Valvoline knew or should have known of the harassment but failed to properly address it. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012).[2]

Plaintiff's Complaint alleges two "instances" of sexual harassment – the 2019 time-barred event, as well as the August 2021 event involving Hawkins. *See* Plf's Original Complaint, Doc. 1. In Plaintiff's recitation of events, Plaintiff alleges that after Hawkins inappropriately touched her, but ***before*** she reported the incident, he assigned her additional job duties. To the extent Plaintiff is arguing that those alleged assignments support her hostile work environment claim, such argument is without merit. Even if the allegations were true, it would be insufficient to establish a hostile work environment. Being "directed to perform tasks that fell within [the] job description" generally is insufficient to sustain a hostile work environment claim. *Peterson v. Linear Controls, Inc.*, 757 Fed. Appx' 370, 375 (5th Cir. 2019); *see also Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009) ("No reasonable jury could conclude that being assigned duties that were part of one's job description . . . amount[s] to a hostile work environment.").

---

[2] The fifth factor need not be proven if the harasser is a supervisor with immediate or higher authority over the harassment victim. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

For purposes of the motion for summary judgment, Valvoline does not dispute that Plaintiff is a member of a protected group (female), and that the two alleged touchings would be harassment based on her sex. However, neither incident described in Plaintiff's Complaint rises to the level of an actionable hostile work environment claim. Moreover, because the Company took prompt remedial action – terminating the employment of the two employees within days of her report – her claims fail as a matter of law.

### 1. Plaintiff Cannot Establish the Alleged Harassment Affected a Term, Condition, or Privilege of Employment

As to the fourth prong, "[t]o affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)). This assessment involves both objective and subjective considerations—evidence that a "reasonable person would find [the environment at Valvoline] hostile or abusive" and that Plaintiff perceived the environment as hostile or abusive. *Abbt v. City of Hous.*, 28 F.4th 601, 607 (5th Cir. 2022). The Court should consider the "totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting reference omitted); *see also West v. City of Hous.*, 960 F.3d 736, 742 (5th Cir. 2020) (no single factor dispositive).

"For conduct to be sufficiently severe or pervasive, it must be both objectively and subjectively offensive." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022). In determining whether the alleged harassment was objectively offensive, a district court must "consider the totality of the circumstances, including (1) the frequency of the discriminatory

11

conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618 (5th Cir. 2020) (quotation omitted). "[The] conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 2284 (1998). Conduct that is merely offensive is not actionable. *Id.* at 2283-84 ("The[] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"); *see also Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997) ("Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace.").

The harassment Plaintiff alleges did not occur frequently. *Cf. West*, 960 F.3 at 742 (the Fifth Circuit rejected a female firefighter's contention of frequent and pervasive harassment, when the incidents of alleged harassment including subordinate throwing a bag at her, male firefighters sleeping in their underwear, male coworkers grabbing themselves at the dinner table, and the presence of adult magazines at work). Neither does Plaintiff allege the type of extended and unrelenting harassment found in *Harvill v. Westward Comm.*, 433 F.3d 428 (5th Cir. 2005) (alleged harasser grabbed plaintiff and kissed her on the cheek, popped rubber bands on her breasts, fondled her breasts "numerous times," patted her on the buttocks "numerous times," and came behind her and rubbed his body against her) or *McKinnis v. Crescent Guardian, Inc.*, 189 F. App'x 307 (5th Cir. 2006) (plaintiff's allegations included more than just inappropriate comments and a pat on the arm; the alleged harasser touched the intimate areas of plaintiff's body on a number of occasions).

The Fifth Circuit has previously refused to find severe harassment when, among other things, a coworker made a comment about a fellow employee's body, slapped an employee's

behind with a newspaper, and held her cheeks and tried to kiss her. *See Hockman*, 407 F.3d at 328 (characterizing the slap as simple teasing and the attempted kiss as "not serious"); *see also Barnett v. Boeing Co.*, 306 F. App'x 875, 879 (5th Cir. 2009) (concluding that unwanted touching, leering, sexually suggestive comments, and intimidation did not amount to severe harassment); *Gibson v. Potter*, 364 F. App'x 397, 398-99, 401 (5th Cir. 2008) (finding no severe harassment when supervisor grabbed employee's buttocks, made suggestive comments, and engaged in "sex talk").

Two years apart, Plaintiff claimed that two different male coworkers made inappropriate comments and touched her. These claims, even if true, were not severe or pervasive as a matter of law. Therefore, Plaintiff cannot establish the alleged harassment affected a term, condition, or privilege of employment, and her claims must be dismissed.

### 2. Valvoline Took Prompt Remedial Action Upon Learning of the Complaints

An employer can absolve itself of liability on a hostile-work-environment claim by promptly acting to remedy harassment in a manner that is reasonable calculated to end the harassment. *Johnson v. VT Halter Marine, Inc.*, 820 F. App'x 283, 285 (5th Cir. 2020) (quoting *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999)). Whether the employer's action was sufficiently calculated to end the harassment is often a fact-intensive inquiry. *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014). However, in some cases, an employer's actions constitute sufficient, prompt remedial action as a matter of law. *Id.* For example, an employer who takes allegations seriously, promptly initiates an investigation, and then immediately implements disciplinary measures as a result is considered to have taken prompt remedial action. *Id.* (quoting *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994) (per curiam)).

The first instance of alleged sexual harassment occurred when a coworker allegedly touched Plaintiff's buttocks and made inappropriate comments. Even if this occurrence was not time-barred (as it occurred in 2019), Plaintiff cannot establish the fifth element of her hostile work environment claim. As soon as Plaintiff raised the issue to Valvoline management, Valvoline promptly investigated the complaint, and the alleged harasser's employment was immediately terminated. As to the second instance of alleged sexual harassment, Valvoline also took prompt remedial action. Plaintiff submitted her statement of the events on September 1, 2021. The Company immediately investigated her claims, including retrieving the relevant video footage when the touching occurred. The Company terminated Mr. Hawkins' employment on September 3, 2021, a mere two (2) days after Plaintiff submitted her handwritten statement. Therefore, Plaintiff cannot establish that Valvoline failed to properly address her complaints of sexual harassment, and her claims must be dismissed.

The Company also took prompt remedial action to address the text thread that Mr. Hawkins started after his employment was terminated.  According to Plaintiff,  Mr. Hawkins had used one of the photos Plaintiff published on her social media account(s) and started a text thread with other co-workers.  While the Company was not able to ascertain the individuals on the group text, the Company nevertheless took prompt remedial action.  First, Plant Manager Harris recommended that Plaintiff block the phone numbers, which she did.  She was also advised to delete or "unfriend" coworkers from her social media page(s).  Mr. Harris also met with her coworkers and reminded them of Valvoline's anti-harassment policy.  Finally, Plaintiff was moved to the kitting area where she would be physically separated from the co-workers that may have been on the text thread. Plaintiff made no further complaints of sexual harassment after these actions were taken.

Because Valvoline took prompt remedial action concerning Plaintiff's claims, she cannot establish a prima facie case, and her hostile work environment claim should be dismissed.

### 3. Hawkins Was Not a Supervisor

Valvoline anticipates that Plaintiff will argue that Hawkins was a supervisor. However, the Supreme Court has stated that a Title VII supervisor is one who is "empowered [by the employer]…to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013) (citations and quotations omitted). The ability to alter a worker's employment conditions is the critical inquiry. Merely giving directions, assigning tasks, evaluating, or scheduling employees will not create supervisory status. *See Morrow v. Kroger Ltd. P'ship I*, 681 F. App'x 377, 380 (5th Cir. 2017); *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 447-48 (5th Cir. 2014). Hawkins had no authority to hire Plaintiff, fire Plaintiff, promote Plaintiff, reassign Plaintiff with significantly different responsibilities, or make any decision regarding Plaintiff's employee that caused a significant change in benefits. Ex. C, Harris Dec., ¶ 4.

Therefore, any argument that Hawkins was a supervisor would not be meritorious.

### IV. CONCLUSION

For the reasons set forth herein, Defendant Valvoline LLC requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety.

| | |
|---|---|
| Dated: November 10, 2023<br><br>*Of Counsel:*<br><br>Courtney E. Jackson<br>Texas Bar No. 24116560<br>cejackson@littler.com<br>LITTLER MENDELSON, P.C.<br>2001 Ross Avenue, Suite 1500<br>Dallas, Texas 75201-2931<br>214.880.8100<br>214.880.0181 (Fax) | Respectfully submitted,<br><br>*/s/ Jeremy W. Hawpe*<br>Jeremy W. Hawpe (Attorney-in-Charge)<br>Texas Bar No. 24046041<br>jhawpe@littler.com<br>LITTLER MENDELSON, P.C.<br>2001 Ross Avenue, Suite 1500<br>Dallas, Texas 75201-2931<br>214.880.8100<br>214.880.0181 (Fax)<br><br>**ATTORNEYS FOR DEFENDANT VALVOLINE, LLC** |

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of November, 2023, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, Houston Division, using the electronic case filing system of the court.

*/s/ Jeremy W. Hawpe*
Jeremy W. Hawpe